Leonard COSTA, Plaintiff-Appellant,

v.

William P. ROGERS, United States Attorney General, Defendant-Appellee.

No. 298, Docket 25451.

United States Court of Appeals
Second Circuit.

Argued May 14, 1959.

Decided June 16, 1959.

Blanch Freedman, New York City (Alex J. Gossin, Rochester, N. Y. and David M. Freedman, New York City, on the brief), for plaintiff-appellant.

Robert J. Plache, Asst. U. S. Atty., Western District of New York, Buffalo, N. Y. (John O. Henderson, U. S. Atty., Western District of New York, Buffalo, N. Y., on the brief), for defendant-appellee.

Before SWAN, HINCKS and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Plaintiff brought this suit pursuant to section 360(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1503(a) for a declaratory judgment (1) declaring him to be a national of the United States (28 U.S.C.A. § 2201) and (2) declaring an order for a warrant of deportation to be null and void. From a judgment dismissing the complaint on the merits and sustaining the deportation warrant plaintiff appeals.

The issue here is entirely factual. Plaintiff claims that he is a native born citizen of the United States, having been born in Yatesboro, Pennsylvania on August 7, 1905; the government claims that he was born in Sarradifalco, in Sicily, Italy, on August 17, 1903. There is no question that a child, Leonardo, was born in Italy to the admitted parents in August 1903 and with an older sister was brought to this country by the mother in August 1904, the father having previously been admitted. The claim is made, however, that shortly after their arrival the sister while holding the child fell out of a second story window. The sister was seriously injured, Leonardo died. In August 1905 another son was born in Yatesboro. The same name, Leonard, was given to him and appellant asserts that he is that child.

Each party to the controversy has mustered a series of facts claimed to be controlling. Over fifty years had elapsed between the dates of birth and the date of trial. The quality of the testimony was naturally affected by lapse of time and the self interest of appellant and his relatives in the outcome. The trial court searching for the truth was most liberal in admitting all evidence which might bear upon the proper solution. Appellant's father, deceased at the time of trial, had testified in July 1953 during deportation proceedings against Leonard. His testimony was admitted. Children subsequently born were allowed to testify concerning family references to Leonardo's death. An uncle, in Sicily at the time, testified as to a letter from Leonardo's mother advising him of the accident and a family friend remembered seeing three children during a 1907 visit. No records of birth or death, if such were

available, were produced. A 1908 family photograph shows the father, mother and three children. There were ultimately eleven or twelve.

The government not only stresses the self interest of the family in supporting Leonard's claim to citizenship but produced many records inconsistent with the claim. In the early 1930's Leonard began to take an interest in politics, he voted and ran for public office. To participate in these activities, the government contends, he had to be a citizen and therefore he selected a date for his birth after the family's arrival in this country.

Census records of 1910 list a child "Leo," seven years old, Italian, as the second of five children. The 1920 census lists him as seventeen, born in Italy and having come to the United States in 1904. The next census (as of June 1, 1925) Leonard is shown to be twenty-one, an alien and native of Italy. In 1925 and 1928 appellant applied for insurance stating that he was born in Italy and giving an age consistent with a 1903 birth. Persuasive also are birth certificates of children subsequently born. Children stated to be the eighth and ninth would have been ninth and tenth. The second and third children admittedly having died before Leonardo's 1903 birth, had he died there would have been three deaths but only two are stated on the subsequent certificates.

Appellant's mother was a devout Catholic but no record of any death was found in the Yatesboro Catholic church. No record of any baptism was found and Leonard himself admitted that he was never baptized.

The trial court had to resolve the factual conflict. He saw and heard the witnesses. The finding that "Plaintiff has failed to sustain the burden of proof that he was born in the United States" is amply justified. On this ground dismissal of the complaint upon the merits will be affirmed.

We do not pass upon the finding that the plaintiff was born in Italy on August 17, 1903, nor upon the conclusion that he is subject to deportation. In March 1952 a deportation proceeding was instituted against appellant and after a hearing and an appeal to the Board of Immigration Appeals a final order of deportation was entered. The appeal to review the deportation order has been stayed pending an administrative rehearing. Whether in the deportation proceedings the government has sustained the burden of proving that the appellant was born in Italy and is not a citizen of the United States will depend upon the evidence and findings in those proceedings and cannot be determined on this appeal.

The judgment so far as it dismisses appellant's complaint in his action for declaration of citizenship is affirmed.